## Ramsey County *vs.* Macalester College.

Argued Nov. 1, 1892. Decided Dec. 1, 1892.

**College Grounds Exempt from Taxation—Extent of.**

A college owns 40 acres of land, on which the college buildings are situated. On a part of the tract, near the college buildings, the college has erected several houses as places of residence for the professors or faculty, such premises being used for no other purpose. *Held*, that the premises used for that purpose are within the statutory exemption from taxation.

**Same—Lands Unused not Exempt.**

About twenty acres of the land are in a state of nature, partially covered with forest trees and partially swampy, never having been improved or used. It is contemplated that the property will be improved and devoted to the use of the college as a place of recreation at some *indefinite* future time, such use being, perhaps, needful. *Held*, that the property is not now exempt from taxation.

In proceedings to obtain judgment against certain tracts of land owned by Macalester College the District Court of Ramsey county *Kelly*, J., gave judgment June 25, 1892, sustaining the tax levy.

The point raised by the college in opposition to the taxation of its grounds was, in the opinion of that court, of great public importance, and liable to arise frequently, and on application of the college the trial court on August 16, 1892, made a statement of the facts established bearing on the point of its decision and transmitted it to this court pursuant to 1878 G. S. ch. 11, § 80.

*H. J. Horn,* for Macalester College, cited the following beside others mentioned in the opinion: *City of St. Paul* v. *St. Paul, M. & M. Ry. Co.,* 39 Minn. 112; *Trustees Wesleyan Academy* v. *Inhabitants of Wilbraham,* 99 Mass. 599; *State* v. *Ross,* 4 Zab. 497.

*T. D. O'Brien,* for Ramsey County, cited the following beside others mentioned in the opinion: *County of Hennepin* v. *Bell,* 43 Minn. 344; *Kendrick* v. *Farquhar,* 8 Ohio, 189; *Trustees M. E. Church* v. *Ellis,* 38 Ind. 3; *Vail* v. *Beach,* 10 Kan. 214.

DICKINSON, J. This matter, certified to this court from the District Court pursuant to statute, presents the question of the taxability of a part of a tract of land owned by Macalester College, upon which tract the college building and other structures are situated.

The entire tract to which reference is made is the east forty acres of a certain quarter section of land; being about one half of a mile long, north and south, and about one eighth of a mile wide, east and west. About six acres of this are within the limits of streets, by which the tract is surrounded. The college is an incorporated educational institution, fitly denominated a college, its curriculum being such as is usually pursued in our secular colleges. This forty-acre tract was donated to the corporation for the purposes of the college, being conveyed to it in fee about ten years ago. That part of the tract comprising the south twenty acres (20.023 acres) is mostly covered with forest trees, and, as was shown on the hearing, was in part swampy. It has not been improved, or put to any actual and necessary use by the college. It may be deemed to have been the intention of the

trustees to improve and beautify this part of the grounds when they should be financially able to do so, and to make it an attractive place of resort by the students for recreation and pleasure; but the time when this may be expected to be done was not shown, and seems to be wholly indefinite. This part of the tract was taxed, and the District Court sustained the taxation, holding that it was not exempt.

A part of the tract off the north end, comprising nearly eight acres, (7.867 acres,) was also taxed, and this taxation was sustained by the District Court. On this part of the land the college erected five dwelling houses (four of which are still standing) for the use of its professors or faculty, so that they might be conveniently located near the main college building. These buildings have never been leased or used for profit, but they have been occupied by the professors without charge for rent. The evidence shows that the college pays to its professors stated salaries and the use of a house.

The remainder of the tract, comprising about twelve acres, lying between the parts above referred to, was not taxed, being deemed to be exempt under the constitution and the statute. On this part of the premises there has been constructed and is in use the main college building, with dormitories for students, and a library building; and here also is the *campus* and grounds used by the students for athletic games.

The college has not less than one hundred students, a large part of whom occupy the dormitories in the college building. There are no fences or other visible divisions of the forty-acre tract. None of the premises have ever been used for profit.

The constitution (article 9, § 3) provides that "public burying grounds, public schoolhouses, public hospitals, academies, colleges, universities, and all seminaries of learning, all churches, church property used for religious purposes, and houses of worship,  *  *  *  shall, by general laws, be exempt from taxation." By statute (1878 G. S. ch. 11, § 5) it is declared that "all public schoolhouses, academies, colleges, universities, and seminaries of learning, with the books and furniture therein, and the grounds attached to such buildings, necessary for their proper occupancy, use, and enjoyment, and not leased or otherwise used with a view to profit; houses used exclu-

sively for public worship, and the lot or parts of lots upon which such houses are erected,"—shall be exempt from taxation.

The question is whether the south twenty acres and the north eight acres, respectively, are within the exemption thus declared by reason of being *necessary for the proper occupancy, use, and enjoyment of the college.* . We will first consider this with reference to the north eight acres, occupied as places of residence by the professors.

It is contended that the former decisions of this court in *St. Peter's Church* v. *County of Scott,* 12 Minn. 395, (Gil. 280;) *County of Hennepin* v. *Grace,* 27 Minn. 503, (8 N. W. Rep. 761;) and *County of Ramsey* v. *Church of Good Shepherd,* 45 Minn. 229, (47 N. W. Rep. 783,)—are opposed to this claim of exemption. But those cases are so different from this that they are not of controlling influence as respects the question now presented. The results in those cases were determined by the construction of a different clause of the exemption law from that which controls the determination in the matter now before us. The question in each of the cases cited was whether a church, parsonage, or rectory should be construed as included within the language of the exemption statute, *"houses used exclusively for public worship,"* or (as was also considered in the last of these cases) within the language of the constitution, "church property used for religious purposes." Those decisions might have been different if the language applicable to church property had been, as it is with respect to colleges and institutions of learning, "the grounds attached to such buildings, [churches,] necessary for their proper occupancy, use, and enjoyment." It is, however, settled by these and many other decisions that such exemption laws are to be strictly construed.

What, then, is the meaning, as applied to such institutions as are referred to in the law, of the language, "and the grounds attached to such buildings, necessary for their proper occupancy, use, and enjoyment, and not leased," etc. ? This word "necessary" should not be read in its strictest sense, restricting the exemption to the land actually occupied by such college buildings as are devoted to the purposes of class rooms, lecture rooms, libraries, and the accommodation of students. The language has this broader meaning, viz.,

"*reasonably* necessary or appropriate for the proper occupancy, use, and enjoyment of the institution." *County of Hennepin* v. *Brotherhood of Gethsemane*, 27 Minn. 460, 462, 463, (8 N. W. Rep. 595;) *County of Hennepin* v. *Grace, supra.* What uses may be thus appropriate, within the limits of reasonable necessity, has been left to be determined with reference to the circumstances of each case. Construing the statutory exemption as above indicated, we are of the opinion that it embraces the property in question, devoted to the use of the college as places of residence for the professors. This occupancy by the faculty without rent, and under circumstances rendering their occupancy and use incidental to their relation to the college under contracts for their personal services, the ordinary relation of landlord and tenant was not created. *East Norway Lake Church* v. *Froislie,* 37 Minn. 447, (35 N. W. Rep. 260.) Such occupants acquired no estate or interest in the property. Its appropriation to such purposes seems to have been primarily and directly for the benefit of the college, although incidentally this may have contributed to the convenience and benefit of these persons. But even their convenience, as affected by the use of these residences in the immediate vicinity of the college, was associated with the performance of duties in behalf of the institution; duties which would seem to render it highly expedient that they should reside near the college. It is unnecessary to advert to the ordinary duties of the professors as instructors, calling them to the class rooms at various hours of the day. Aside from this, while the facts are not as fully presented as may have been desirable, we understand that, as is the case generally in such institutions, the duties of the professors are not confined merely to instruction in the class or lecture rooms, but that they exercise such supervision and personal influence over the daily conduct and life of the students as are necessary during the period of youth. It appears that the students here are of ages from fourteen years upwards. Aside from what relates to mere educational work in its narrow sense, the duties of those to whom it is committed to guide, superintend, control, and influence youthful students, removed from home surroundings, are not only important, but constant. No more need be said to suggest to the mind the reasonable necessity that

those upon whom rests the direction of affairs in the ordinary government and work of the college should have the advantage of residence in immediate vicinity to the college. A reasonable means of securing this advantage is for the college to provide residences for its faculty and governing officers. When this institution was founded, a few years ago, as the evidence shows, there were not other houses in the vicinity, and there was an apparent and present necessity for the construction of these houses for the use of the college. If, possibly, the need for maintaining them for the same purpose has now become less imperative, (which is not shown,) it may well be deemed still an appropriate use of the property within the limits of reasonable necessity, so that the college may *always* have its faculty located in the immediate vicinity of the institution; otherwise it might often occur that professors and tutors would be unable to find residences, except at such a distance as to impair in some degree their usefulness. We therefore hold that such property is exempt. There is no claim made that the amount of property so used is unreasonable, but only that the use of it is such as not to bring it within the exemption. The following authorities go to sustain the views we have expressed: *County of Hennepin* v. *Grace, supra; State* v. *Ross,* 24 N. J. Law, 497; *Pierce* v. *Inhabitants of Cambridge,* 2 Cush. 611; *Trustees of Griswold College* v. *State,* 46 Iowa, 275. While the case of *Pierce* v. *Inhabitants of Cambridge* was not like this, the court expressed the opinion that, under circumstances such as are here presented, the property would be exempt.

As to the twenty acres of unoccupied land, we have come to the conclusion that it is not within the declared exemption. The cases in which the question of the direct taxability of railroad property has been considered, such as *County of Ramsey* v. *Chicago, M. & St. P. Ry. Co.,* 33 Minn. 537, (24 N. W. Rep. 313;) *County of Todd* v. *St. Paul, M. & M. Ry. Co.,* 38 Minn. 163, (36 N. W. Rep. 109,)—and others involving similar questions, have but little bearing upon the question now before us, for the reason that those cases did not relate to the question of *exemption* from taxation, but rather to the proper *method* of taxation; the use of the property, actual or contemplated, being regarded as decisive as to whether it should be subject to di-

rect taxation, or whether the proper contribution to the state on account of such property should be regarded as included in the percentage paid on the earnings of the railroad. The question here is as to the absolute exemption of this property under the statute above recited. It may be that, if the twenty acres of land now referred to had been subjected to actual use for purposes of recreation, it might have been exempt. The question would have been as to the reasonableness of the quantity of the land so used, and that would depend to some extent upon various circumstances. But such is not the case. The land is not occupied, used, or enjoyed, and it can hardly be said that, within the meaning of the statute, it is at present "necessary" for the "proper occupancy, use, and enjoyment" of the college. Even if it is not to be said that such language refers to an existing or present need and use, it is at least to be said that it does not naturally refer to or comprehend cases where the use of the property is to be postponed to an *indefinite* future time. Hence, observing the principle of strict construction, it should not be construed to embrace all property, however extensive, actually owned by the institution, even though it is needed for present use, if, in fact, not being presently useful, it is only intended to make it so at some indefinite future time. The result might be different if the premises were about to be subjected to the occupancy or use for which they are needful.

The determination of the District Court as to the eight-acre tract is reversed, and as to the twenty-acre tract it is affirmed.

VANDERBURGH, J., did not sit in the hearing of this case.

(Opinion published 53 N. W. Rep. 704.)