## STATE v. UNION CONGREGATIONAL CHURCH.[1]

November 25, 1927.

No. 26,329.

**Rented house and lot of church corporation not used as parsonage or in its work is not exempt from taxation.**

1. A lot and dwelling house, owned by a church corporation and not used as a residence for its minister or in connection with its religious or charitable work or activities, but rented to others for dwelling purposes and the rental used by the church corporation in support of its religious exercises, are not exempt from taxes.

**Meaning of the term "church property" in state constitution.**

2. The term "church property," as used in the constitutional provision exempting from taxation "all churches, church property and houses of worship," has reference to the use of the property and its relation to the purposes and activities of the church organization and does not exempt real property not used by it for any purpose except to derive income therefrom.

Taxation, 37 Cyc. p. 942 n. 94, 95; p. 944 n. 13.

See note in 17 A. L. R. pp. 1029, 1039; 26 R. C. L. 324; 4 R. C. L. Supp. 1659; 5 R. C. L. Supp. 1401.

Defendant appealed from an order of the district court for Hennepin county, Guilford, J. denying its motion for a new trial. Affirmed.

*Abbott L. Fletcher,* for appellant.

*Frank J. Williams,* Assistant County Attorney, for the state.

OLSEN, C.

This is a proceeding to enforce delinquent taxes on real estate, and defendant appeals from an order denying its motion for a new trial.

[1]Reported in 216 N. W. 326.

Defendant is a religious corporation, organized and existing under the laws of this state and located at the village of St. Louis Park, Hennepin county, Minnesota. Since the year 1893 and up to the present time, the defendant has and does own a lot or small tract of land in said village with a dwelling house thereon. From the year 1893 up to July 1, 1920, this dwelling house and property were actually used and occupied as a parsonage by pastors in charge of the church and religious services maintained and conducted by defendant in said village. During the time since July 1, 1920, the property has not been used as a parsonage or by the ministers of defendant, but has been rented to others and the rental received therefrom has been used by defendant in the support of its religious exercises.

The court held the property exempt from taxes up to and including the year 1920, and not exempt and subject to taxes for 1921 and subsequent years. The defendant claims the property is exempt since 1920, as well as prior thereto, under the provision of the state constitution, art. 9, § 1, exempting "all churches, church property and houses of worship."

1. The question here presented is whether or not a lot and dwelling house, owned by a church and rented to others for dwelling purposes, the rental therefrom being used by the society in support or aid of its religious work, are church property within the meaning of the constitutional provision stated and thereby exempt from taxation.

No special significance can be given to the fact that this property was actually used as a parsonage for many years prior to July 1, 1920. It is ordinary residence property, and when it ceased to be occupied or used as a residence for the pastor of the society and was rented to others for dwelling purposes it ceased to be a parsonage or to be used in any way for church or religious purposes. It then ceased to be "church property" just as a house of worship ceases to be such if it is abandoned for that purpose and rented and used for business purposes.

Prior to 1906, the constitutional provision exempted from taxation "all churches, church property used for religious purposes, and

houses of worship." Under that provision it was held that a rectory or parsonage belonging to a church society and actually used as a residence for the priest or minister of the society was not exempt. County of Ramsey v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783. The constitution was amended in 1906 so as to eliminate the words "used for religious purposes" immediately following the words "church property." Then the question of the exemption of parsonages came again before this court, under the amended constitutional provision, in the case of State v. Church of Incarnation, 158 Minn. 48, 196 N. W. 802, and it was held that a parsonage, owned by the church society and actually used and maintained by the society as a residence for its priest or minister, free of charge or rent, was exempt from taxes. The case goes to that extent only and does not decide the issue in the present case. The court does, however, indicate the rule which is now to be applied in determining the extent of the exemption granted to church societies under the present wording of the constitution. The court [158 Minn. 52] states:

"The words 'used for religious purposes' have been eliminated, so that the language relating to churches is now as broad as that relating to institutions of learning.  *  *  *  We have no doubt that the purpose in eliminating those words was to remove the restriction which they had been construed as placing on the exemption granted to churches, and to make the rule applied in respect to the property of institutions of learning applicable in respect to the property of churches to the extent of exempting a parsonage owned and maintained by a church organization as a residence for its pastor."

It is then pertinent to inquire as to what rule is applied in respect to the exemption of property of institutions of learning. That question has been considered in a number of cases by this court, and from those cases a reasonably definite rule may be deduced. Reference may be made to the following:

County of Hennepin v. Brotherhood of Gethsemane, 27 Minn. 460, 8 N. W. 595, 38 Am. R. 298; County of Hennepin v. Grace, 27 Minn. 503, 8 N. W. 761; County of Hennepin v. Bell, 43 Minn. 344, 45

N. W. 615; Ramsey County v. Macalester College, 51 Minn. 437, 53 N. W. 704, 18 L. R. A. 278; State v. Bishop Seabury Mission, 90 Minn. 92, 95 N. W. 882; State v. St. Barnabas Hospital, 95 Minn. 489, 104 N. W. 551; State v. Carleton College, 154 Minn. 280, 191 N. W. 400.

It is interesting to note that as early as in the case of County of Hennepin v. Brotherhood of Gethsemane, 27 Minn. 460, 462, 8 N. W. 595, 38 Am. R. 298, the court held that the word "institution," as applied to an institution of public charity, "comprehends not only a building, and the ground covered by it, but adjacent ground which is reasonably necessary or appropriate to the purposes and objects in view, and which is used directly for the promotion and accomplishment of the same."

In the Bishop Seabury Mission case, 90 Minn. 92, 95 N. W. 882, Justice Brown, referring to the reported cases from other states, says [at p. 98]:

"By a practically unanimous voice it has been held that the exemption extends to and embraces such land and real property only as is necessary for, and in fact used in connection with, the institution."

That case involved the question of the exemption not of real estate but of invested funds, and in that connection it is stated [at p. 100]:

"Of course, if such fund should be invested in real property, the immunity from taxation would cease, within the rule of the cases herein cited."

Attention is also called to the fact that holding invested funds of the school exempt, and real estate from which it receives income not exempt, may seem somewhat inconsistent, but that it harmonizes with the best interests of the schools and the policy of this state towards such institutions.

In the case of State v. St. Barnabas Hospital, 95 Minn. 489, 104 N. W. 551, the defendant owned a farm which it rented and received therefrom a rental of about $600 a year, which income was used for

hospital purposes, for support and care of charity patients, the hospital being operated for charitable purposes only. The real estate was held not exempt from taxation.

The recent case of State v. Carleton College, 154 Minn. 280, 191 N. W. 400, reviews all the cases cited and other cases from this and other states. Justice Holt, speaking for the court in that case, states [at p. 286]:

"All authorities agree that when an institution is exempted from taxation this includes all its property devoted to and reasonably necessary for the accomplishment of its purposes."

The decision is that dormitories, houses used for residences for the college president and members of the faculty, the college buildings and campus, and a tract of land adjoining the campus used for farming purposes but operated by the college corporation and having dormitories or accommodations for 15 students, were all exempt from taxation. It is stated that the object of the college authorities in acquiring and operating the farm was to secure an attractive setting for the college campus and ample grounds for extension thereof, including maintenance of a chain of artificial lakes; to interest and keep students in touch with rural activities; to furnish means of employment to self-supporting students; and to supply the dormitories with milk. This farm was held exempt as coming within the rule of being property reasonably necessary and proper for operation and maintenance of the school and actually used and devoted primarily to legitimate purposes of the institution. A tract of land located about two miles away from the college, although apparently used by the college, is however held taxable, the court stating [at p. 288]:

"Its proximity to the main buildings of the institution is not such as will lend itself readily to serve any apparent present purpose. Its use does not seem reasonably necessary."

No hard and fast rule can properly be laid down to govern all cases. Generally speaking, it may be said that the rule governing exemption from taxation as to the real property of educational

institutions is that all property reasonably necessary for and primarily used and devoted to the proper purposes of the institution and so located with reference to the main buildings or activities of the institution as to be reasonably suitable for such purposes is exempt from taxation. A reasonable amount of property intended and reasonably necessary for such use in the near future, and suitably located, may also be exempt.

Applying the same rule to church societies, a lot and dwelling house rented to others and not used in any way for religious or church purposes, and not shown to be intended or necessary for such use in the future, are not exempt.

2. Counsel for defendant argues that the constitution makes no reference to the purpose for which the property shall be used, that no limit is placed on the use of the property, and urges that the term "church property" should be construed as if it read "all property owned by a church corporation or religious society." To this we are unable to agree. The connection in which the words are used does not indicate or require such a construction. The words used in the constitution are, "all churches, church property and houses of worship." The words "churches" and "houses of worship" clearly refer to the kind of use made of the buildings. A building in the usual architectural form of a church, if used for a railway station or business house, would not be a church or a house of worship, and an ordinary business building used only for religious services would be a church or house of worship. So it is the use of the property which determines whether or not it is a church or house of worship. The term "church property" used in immediate connection with the words "churches" and "houses of worship" readily bears the same construction, that it is the use or relation of the property to the purposes and activities of the church organization which determines whether or not it is church property. That is the reasonable construction and the one here adopted.

The general rule is that laws and constitutional provisions exempting property from taxation are to be strictly construed. Such laws are to be given a reasonable and practical construction that

will give effect to their manifest purpose, but will not be extended by construction or implication. Unless clearly so expressed and intended, it is not to be assumed that the legislature or the people intended to permit religious corporations and charitable and educational institutions to hold tax free any amount of real estate they might be able to acquire, without reference to the need or use thereof. The evil of permitting any class of corporations or societies to become tax-exempt proprietors and landlords on a large scale is too well known. As said by Justice Holt in the Carleton College case, 154 Minn. 280, 283, 191 N. W. 400:

"If the church could acquire and hold free from taxes property used in business enterprises, she would depart from her true mission and become a competitor of other business concerns, a field in which she is entitled to no advantage over them."

The owning of city and village residence property for the purpose of renting the same and receiving income therefrom is a business enterprise engaged in by many corporations and individuals.

Without express provision to that effect, we are not willing to hold that by the constitutional provision in question, as amended, the legislature or the people intended to open wide the door of exemption and relieve from taxation all real estate owned by church corporations or religious societies, irrespective of the use of such property.

A number of cases are cited from other states. Most, if not all, of these cases arose under constitutional or statutory provisions differently worded than our constitution. In the South Dakota case, Dakota Wesleyan University v. Betts, 47 S. D. 618, 201 N. W. 524, the exemption was "all property, both real and personal, belonging to any educational institution" and "all property used exclusively by and for the support of such institution." This of course is a wide open provision exempting not only all property owned by the institution, but also any property used exclusively by it for support even if owned by others.

Other cases cited from Georgia, Tennessee and Louisiana were under exemption laws using such words as "any house belonging

to;" real estate "so long as said land belongs to;" and "all property of;" all very clearly making ownership the test. Mayor, etc. of Savannah v. Solomon's Lodge, 53 Ga. 93; University of the South v. Skidmore, 87 Tenn. 155, 9 S. W. 892; City of New Orleans v. Poydras Orphan Asylum, 33 La. Ann. 850.

Two cases, one from West Virginia and one from South Carolina, State v. Kittle, 87 W. Va. 526, 105 S. E. 775, and Protestant Episcopal Church v. Prioleau, 63 S. C. 70, 40 S. E. 1026, 57 L. R. A. 606, are cited, holding in effect that property which had been used for parsonages and later rented remained exempt; in one case partly because it was considered to remain a parsonage, and in both cases because the rentals were used for religious purposes. We find nothing in those cases to change our views.

Order affirmed.