639 P.2d 69

GRACE, INCORPORATED, a New
Mexico Non-Profit Corporation,
Plaintiff-Appellant,

v.

The BOARD OF COUNTY COMMISSION-
ERS, COUNTY OF BERNALILLO,
State of New Mexico, Defendants-Ap-
pellees.

No. 5233.

Court of Appeals of New Mexico.

Nov. 19, 1981.

Rehearing Denied Dec. 1, 1981.

Writ of Certiorari Denied Jan. 20, 1982.

Perry S. Key, Albuquerque, for plaintiff-appellant.

Kenneth A. Hunt, Asst. County Atty., Albuquerque, for defendants-appellees.

OPINION

WALTERS, Chief Judge.

Plaintiff appeals from denial of a property tax refund it sought in District Court, claiming exemption under Art. VIII, § 3 of the New Mexico Constitution.

The constitutional provision relied on by plaintiff is as follows:

* * * [A]ll church property not used for commercial purposes, all property used for educational or charitable purposes * * * shall be exempt from taxation.

It appears from the trial court's findings that Grace, Inc. ("Grace") is a non-profit corporation governed by the laws and regulations of the Methodist Church. The parties stipulated that the corporation's sole purpose is to acquire land and when a Methodist Church is established on any so-acquired lands, to deed the land to the church. Bernalillo County assessed property taxes on a vacant lot which Grace had acquired for the purpose of building a church thereon sometime in the future. The court found that the property was owned by plaintiff and was not commercial property nor used for commercial purposes. It concluded that "[t]he subject property which is vacant property is not church property pursuant to" the constitutional provisions on tax exemptions.

Plaintiff argues that the case relied on by the trial court, *Church of the Holy Faith v. State Tax Comm'n*, 39 N.M. 403, 48 P.2d 777 (1935), is no longer controlling because the constitutional church exemption when construed in *Holy Faith, supra*, read:

* * * [A]ll church property, all property used for educational or charitable purposes * * * shall be exempt from taxation.

Under that earlier constitutional section, our Supreme Court determined that "the phrase 'church property' * * * means property required for the use of the church * *." It went on to say: "Taxation is the rule, exemption the exception, and it is plain that * * * the exception fails as to property of a church as an entity which is not necessary

for or is not used to promote the object or purpose of the church." In *Holy Faith, supra,* a dwelling house owned by the church, rentals from which were used for the church's religious and charitable purposes, was held not "church property," nor was it being used for "charitable purposes."

Grace urges that the 1972 constitutional amendment since the *Holy Faith* decision compels us to abandon the "use" analysis employed by the Supreme Court in *Holy Faith,* and consider only that the property, admittedly owned by a church corporation, is *not* being used for a commercial purpose and it therefore falls within the tax exemption.

The argument is appealing; nevertheless, we feel obliged to recognize the principles expounded in *Holy Faith* and assume that the constitutional amendment was intended to conform the language of our Constitution with the decision reached there by our Supreme Court. Had the proponents of the amendment intended otherwise, we think the amendment might have stated "all church-owned property, without exception * * *" or contained words of similar import. Our conclusion is bolstered by the reasoning of *Holy Faith* and other cases since the amendment took effect. In determining that ownership alone should not be the test for tax-exemption, the *Holy Faith* court approvingly quoted from *State v. Union Congregational Church,* 173 Minn. 40, 216 N.W. 326 at 328:

> [I]t is not to be assumed that the Legislature or the people intended to permit religious corporations and charitable and educational institutions to hold tax free any amount of real estate they might be able to acquire, without reference to the need or use thereof.

39 N.M. at 414, 48 P.2d at 783.

That rationale has been repeated since *Holy Faith.* In *NRA Special Contribution Fund v. Bd. of Cty. Comm'rs,* 92 N.M. 541, 591 P.2d 672 (Ct.App.1978), we observed that "it is the direct and immediate use of the property that must govern our decision [regarding property tax exemption], and not the remote and consequential benefit derived from its use." We said, at 92 N.M. 548, (per Sutin, J.):

> The rationale for this [constitutional] provision [equal property taxation] is that all property shall bear its share of the cost of government. Property which is exempt from taxation does not share in the burden. Therefore, in exchange for its exempt status, such property must confer a substantial benefit on the public.

And, further, at 92 N.M. 541:

> Where the land is idle, unimproved, and not in actual use * * * it will not qualify for tax exemption * * *. If a tax burden is placed on idle, unimproved, and unused land, it will create an incentive to avoid idleness and make a substantial use of the land [for tax-exempt] purposes.

*Sisters of Charity v. County of Bernalillo,* 93 N.M. 42, 596 P.2d 255 (1979), also applied the ownership-*and*-use inquiry to determine whether property owned by a charitable institution, a portion of which was leased to a charitable organization, and the proceeds of which produced no other income than necessary to reduce the lessor's mortgage obligation, was tax-exempt. Under those facts, it was held that the pro-tanto amount of property leased to the charitable organization was exempt; the remainder was not. That case specifically looked to *use* of the property to attain the result reached.

We hold, therefore, that the constitutional language "not used for commercial purposes" contemplates a concurrent affirmative, active, non-taxable *use* to qualify church-owned property for tax-exempt status. A decision based on ownership alone denies a consideration of the principles of "use," and we do not believe that an historical survey of New Mexico case law relative to tax exemption will permit us to ignore that pervasive consideration. We cannot equate "not used for commercial purposes" with "not used at all," because, in our opinion, to do so would be to disregard everything our courts have said to date regarding the interpretation to be given this section of our Constitution.

The judgment of the trial court is affirmed.

It is so ordered.

LOPEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

The trial court found:

3. The plaintiff is a non-profit corporation * * * controlled and governed by the laws and regulations of the United Methodist Church * * *.

4. The plaintiff is controlled by and subject to the Discipline of the United Methodist Church.

5. The property is vacant property and was obtained * * * to build a church at some time in the future.

6. The property * * * is not commercial property or property used for commercial purposes as defined by * * * Regulations of the Property Tax Division * * *.

\* \* \* \* \* \*

The trial court concluded:

\* \* \* \* \* \*

2. "Church property" means property required for use of the church and is property used for religious worship and instruction. (*Church of the Holy Faith, Inc. vs. State Tax Commission, et al.*, 39 N.M. 403, 48 P.2d 777)

3. [V]acant property is not church property pursuant to Article VIII, Section 3, or [sic] the Constitution of the State of New Mexico.

4. The subject property is taxable by the County of Bernalillo.

The findings of the trial court established that *Grace's* property is exempt from taxation. We are concerned only with the conclusions of the court. *Church of the Holy Faith* is the stumbling block.

*Church of the Holy Faith* was decided in 1935 prior to the amendment of Article VIII, § 3 of the New Mexico Constitution. Prior to the amendment, this section read in pertinent part:

[A]ll church property * * * shall be exempt from taxation.

*Church of the Holy Faith* held that a dwelling house and the lot upon which it was situated and rented, the proceeds of which were turned over to the parish church and used for religious purposes, was not "church property." The court said:

We conclude that the property in question is not being used for religious purposes and therefore is not "church property" ... and is therefore subject to taxation. [39 N.M. 416.]

In other words, the court held "ownership" of church property irrelevant to the right of exemption from taxation. "Use" of church property for religious purposes, not mentioned in the Constitution, was the essential basis upon which to claim an exemption. To be sure, I agree with the dissenting opinion of Justice Zinn concurred in by Justice Watson, that:

"All church property" is plain language, and to the mind of the citizen who voted for its adoption it had but one meaning, simply all property belonging to the church, or all property of the church. [39 N.M. 418.]

"All church property" does not require "metaphysical or logical subtleties" to interpret it.

Nevertheless, prior to the constitutional amendment, *Church of the Holy Faith* remained the law of the State. Churches recognized that they were forestalled from future planning because they could not avoid the burden of taxation. Churches, speaking through people, decided to change the *Church of the Holy Faith* rule. In 1972, the people amended Article VIII, § 3 to read:

[A]ll church property *not used for commercial purposes* * * * shall be exempt from taxation. [Emphasis added.]

By adoption of this constitutional amendment, the people substituted "not used for commercial purposes" for "not being used for religious purposes." Grace's vacant property, "not used for commercial pur-

poses * * * shall be exempt from taxation." The constitutional amendment cured the ailment fostered by *Church of the Holy Faith.* Of course, if church property was used for commercial purposes, it would be subject to taxation.

If we apply the amended constitutional amendment to the rule established in *Church of the Holy Faith* it would read:

> We conclude that the property in question, not being used for religious purposes and "not used for commercial purposes" is, nevertheless, not "church property" and is therefore subject to taxation.

In other words, vacant church property is and is not exempt from taxation. If it is not used for religious purposes it is not exempt from taxation. But if it is "not used for commercial purposes" it is exempt. Or, if we say that vacant property "not used for commercial purposes" is not "church property," the corollary is that vacant property "used for commercial purposes" is church property. We should not move from the sublime to the ridiculous to tax "church property."

Reliance on rules of judicial construction of constitutional provisions which relate to tax exemption is an escape hatch. If an appellate court desires to deny an exemption, it states that an exemption from taxation must receive a strict construction and no claim of exemption should be sustained unless it is within the express letter or necessary scope of an exempting clause. On the other hand, if an appellate court desires to grant an exemption, it makes mockery of and casts aside the canon of strict construction. *Temple Lodge No. 6, A. F. & A. M. v. Tierney,* 37 N.M. 178, 20 P.2d 280 (1933).

The most reasonable rule to follow, if one becomes necessary, is this:

> Constitutional provisions for exemption from taxation should be given a reasonable, natural and practical construction to effectuate the purpose for which the exemption is created.

This rule does not lead to strained or unreasonable construction. Our Constitution is not a mere passive, stagnant entity, lagging behind the progress of human events and not susceptible of application to new situations. Rather it is a living, vital thing, not helpless to deal with new phases of old matters. It reaches out to embrace within its letter that which is clearly within its spirit.

The judgment of the district court should be reversed.