NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

HUB PROPERTIES TRUST,
a Maryland Real estate investment trust,
*Plaintiff/Appellant*,

*v.*

MARICOPA COUNTY, a political subdivision of the State of Arizona;
THE ARIZONA DEPARTMENT OF REVENUE,
an agency of the State of Arizona,
*Defendants/Appellees*.

No. 1 CA-TX 14-0005
FILED 1-27-2015

---

Appeal from the Superior Court in Maricopa County
TX2011-000654
The Honorable Dean M. Fink, Judge

**AFFIRMED**

---

COUNSEL

Mooney, Wright & Moore, PLLC, Mesa
By Paul J. Mooney, Jim L. Wright
*Counsel for Plaintiff/Appellant*

Maricopa County Attorney's Office, Phoenix
By Kathleen A. Patterson
*Counsel for Defendant/Appellee Maricopa County*

Arizona Attorney General's Office, Phoenix
By Kenneth J. Love, Jerry A. Fries
*Counsel for Defendant/Appellee Arizona Department of Revenue*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1 Hub Properties Trust (Hub) appeals the grant of summary judgment in favor of Maricopa County and the Arizona Department of Revenue (collectively the State). For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 This appeal concerns a property tax assessment for real property in Maricopa County identified as parcels 111-46-132, 111-46-133, 111-46-138, 111-46-143, 111-46-146 and 111-46-148 (the Property) for tax year 2011. Hub purchased the Property from the City of Phoenix (the City) on March 4, 2011. When the City owned the Property, it was exempt from property taxes pursuant to Arizona Constitution Article 9 Section 2(1) and Arizona Revised Statutes (A.R.S.) section 42-11102.A. (West 2015).[1]

¶3 After Hub purchased the Property, the County Assessor's Office determined the Property was no longer exempt municipal commercial property. As a result, the Property was included in the Assessor's roll as taxable property and was included in the County's tax roll for tax year 2011. The Maricopa County Board of Supervisors then fixed, levied and assessed property taxes for the Property for the County's assessment and tax roll for the 2011 tax year.

---

[1] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

¶4        Hub subsequently brought suit claiming the taxes assessed on the Property were illegally collected because the Property "was not subject to *ad valorem* taxation" and appealed the Property's valuation.  The parties filed cross-motions for summary judgment on the former claim and the tax court granted the State's motion, finding the Property was no longer tax exempt after the City sold it to Hub.  The parties subsequently settled Hub's valuation claim and the tax court entered a stipulated judgment on that issue.  Hub timely appealed the tax court's grant of summary judgment in favor of the State.  We have jurisdiction pursuant to Article 6, section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21.A.1 and -2101.A.1 (West 2015).

## DISCUSSION

¶5        We review the grant of summary judgment and questions of law, including the interpretation of statutes, de novo.  *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 498, 500, ¶¶ 14, 24, 88 P.3d 565, 568, 570 (App. 2004). In reviewing issues of statutory construction, we look to the statute's plain language to determine its meaning.  *Koss Corp. v. American Express Co.*, 233 Ariz. 74, 79, ¶ 12, 309 P.3d 898, 903 (App. 2013).

I.        Property Tax Exemption

¶6        All property in Arizona is subject to taxation unless expressly exempt.  *See* A.R.S. § 42-11002.  Such an exemption applies to federal, state, county, and municipal property.  Ariz. Cons. art. 9 § 2.1; A.R.S. § 42-11102.A.  There is a general presumption against tax exemptions and laws creating property tax exemptions are to be strictly construed.  *See Verde Valley Sch. v. Yavapai Cnty.*, 90 Ariz. 180, 182, 367 P.2d 223, 225 (1961).

¶7        When a taxpayer claims a tax exemption, it must be specifically granted by statute.  *New Cornelia Coop. Mercantile Co. v. Ariz. State Tax Comm'n*, 23 Ariz. App. 324, 327, 533 P.2d 84, 87 (App. 1975). Moreover, "[t]he taxpayers have the burden of establishing the right to an exemption from taxation."  *McElhaney Cattle Co. v. Smith*, 132 Ariz. 286, 291, 645 P.2d 801, 806 (1982).

¶8        On appeal, Hub argues that because the City owned the Property "during the entire assessment period for the tax year 2011, on the tax lien date, and for more than two full months of the tax year at issue herein," the Property was tax exempt during tax year 2011.  Thus, Hub contends the Property was illegally taxed that year.  Hub's argument stems from the notion that once property is exempt, it is exempt for the entire tax year even if there is a change of use or ownership.  Hub argues:

> [A]lthough the [ ] Property was arguably non-exempt for ten months out of tax year 2011-despite being tax exempt during the entire assessment period for tax year 2011, and on the statutory lien date-the Legislature has <u>not</u> provided for the prorated taxation of real property that transitions from government ownership to private ownership during the tax year. Simply put, there is no provision in the law for the prorated taxation of such property. Absent such a provision, there is no legal authority for the [State's] actions in this case.

¶9        Although the City owned the property during the pertinent property valuation period, that is not dispositive in determining whether the Property was tax exempt while Hub owned it in tax year 2011. The statute provides that the County Assessor shall determine the Property's "full cash value" on or before January 1, 2010 for the State's 2011 tax roll. *See* A.R.S. §§ 42-13051.B.2, -11001.19(a) (West 2015). After the sale to Hub, the Property was no longer exempt municipal commercial property. On or before the first Monday in August 2011, the Maricopa County Board of Supervisors "fix[ed], lev[ied], and assess[ed]" property taxes for the Property in accordance with A.R.S. § 42-17151.A.1. (West 2015). There is no dispute that Hub owned the Property during the 2011 assessment period.

¶10        The tax court correctly noted the logical extension of Hub's position that "taxable status is fixed on the valuation date" is that if the State had purchased the Property from a private, taxable party, the State could be required to pay property taxes until the next valuation period. This would clearly contravene the plain meaning of both Article 9, Section 2 of the Arizona Constitution and A.R.S. § 42-11102.A "There *shall be exempt from taxation* all federal, state, county and municipal property." Ariz. Cons. art. 9, § 2 (emphasis added). "Federal, state, county and municipal property *is exempt from taxation*[.]" A.R.S. § 42-11102.A (emphasis added).

¶11        Moreover, we find Hub has failed to meet its burden of showing it was entitled to a property tax exemption for tax year 2011 and cannot point to a statutory provision that explicitly grants such an exemption. The tax court concluded, "[t]he period of exemption . . . begins on the date the property enters government ownership and ends on the date it leaves government ownership." We agree. Although the Property was tax exempt while the City owned it in 2011, the exemption was lifted when Hub purchased the Property in March. *See City of Phoenix v. Elias*, 64 Ariz. 95, 97-101, 166 P.2d 589, 590-92 (1946) (holding property was exempt until January 6th while the State owned it, but could be taxed upon its subsequent

transfer to a private party). Thus, we affirm the tax court's ruling that the Property was not tax exempt after the City sold it to Hub in 2011.

II.     Double Taxation

¶12     Hub contends that it was subject to double taxation because the City could have been required to pay government property lease excise taxes (GPLET) while it owned the Property in 2011 pursuant to A.R.S. § 42-6203.G (West 2015). "Double taxation occurs when the same property or person is taxed twice for the same purpose or for the same taxing period by the same taxing authority[.]" *Lake Havasu City v. Mohave Cnty.*, 138 Ariz. 552, 562, 675 P.2d 1371, 1381 (App. 1983) (internal citations and quotations omitted).

¶13     Under A.R.S. § 42-6203.G:

> Prime lessees of government property improvements who become taxable or whose taxable status terminates during the calendar year in which the taxes are due, including prime lessees subject to exemption or abatement under §§ 42-6208 and 42-6209, shall pay tax for that calendar year on a pro rata basis.

Hub admits that no GPLET were imposed during the 2011 tax year. Instead, Hub's double taxation argument stems from the *possibility* that the State could have assessed GPLET for the 2011 tax year.

¶14     We find three reasons why such a tax would not constitute double taxation when imposed with property taxes. First, GPLET would not be imposed on the same party. Hub is not a "prime lessee" because it did not enter into a lease directly with a government lessor; it purchased the Property from the City. *See* A.R.S. § 42-6201.4 (West 2015). Second, the taxes are not assessed for the same purpose. GPLET are assessed on prime lessees "for the use or occupancy of each government lessor's government property improvement" while *ad valorem* taxes are assessed on the property itself based on its full cash value. A.R.S. § 42-6202.A; *see supra* ¶ 9. Third, the taxes are levied by different taxing authorities. "Government lessors" levy GPLET. A.R.S. § 42-6202.A. By contrast, the property taxes Hub paid were levied by the County Assessor. *See* A.R.S. § 42-17151.A. Thus, we affirm the tax court's ruling that "[t]here is plainly no double taxation here."

III.     Due Process

¶15          Unlike Hub's illegal taxation claim, the parties voluntarily settled Hub's property valuation claim and the tax court entered a stipulated judgment.  However, Hub argues its due process rights were violated because:

> The County's actions in assessing property taxes against the . . . Property for tax year 2011 gave no . . . notice to [Hub] . . . and provided it no opportunity to appeal the proposed valuation to either the Assessor or to the State Board of Equalization prior to having to remit the tax.

Hub mischaracterizes the requirements of due process.  "If it is property that is being taxed, due process requires that the property owner be advised of the tax, and that it have the opportunity to be heard with respect to its assessment."  *Seafirst Corp. v. Ariz. Dep't. of Revenue*, 172 Ariz. 54, 59, 833 P.2d 725, 730 (Tax Ct. 1992).

¶16          Hub undoubtedly had notice of the Property's valuation and had a right to appeal the valuation pursuant to A.R.S. § 42-16205.01.A.1 (West 2015), which permits a new property owner to appeal a property's valuation to a court if the former owner of the property did not have a pending appeal or receive a final judgment or dismissal regarding the property valuation.  Moreover, Hub exercised its due process rights by filing its complaint in the tax court; Hub's second claim for relief was a "Valuation Appeal."

¶17          Hub exercised its right to be heard in the tax court, and we find no authority supporting Hub's argument that due process requires the Assessor or the State Board of Equalization to hear valuation appeals and Hub has not cited to any such authority.  Thus, we find no due process violation and affirm the tax court's ruling on this issue.

## CONCLUSION

**¶18** We affirm the tax court's grant of the State's motion for summary judgment.



Ruth A. Willingham · Clerk of the Court
FILED: ama